**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ATIBA WICKER,** *et al,* : | |
| : | |
| **Plaintiffs** : | |
| : | **CIVIL NO. 3:CV-09-1629** |
| **v.** : | |
| : | **(Judge Caputo)** |
| **ROBERT SHANNON,** *et al.,* : | |
| : | |
| **Defendants** : | |

# M E M O R A N D U M

## I.    Introduction

On August 24, 2009, Atiba Wicker[1] and Jocelyn Stallworth-Destouet,[2] jointly

filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983[3] as a result of a

series of events that occurred at SCI-Frackville.   Plaintiffs' Complaint includes

claims of: due process violations related to institutional misconducts; retaliation

claims exercising their First Amendment rights; race based equal protection claims;

and a state law defamation claim.  Named as defendants are the following

---

[1] Mr. Wicker is a state inmate currently confined at the Frackville State Correctional Institution (SCI-Frackville), Frackville, Pennsylvania.

[2] Ms. Stallworth-Destouet is the mother of Mr. Wicker's minor child.

[3] For the convenience of the reader of this Memorandum/Opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content any hyperlinked site, or at any site to which that site might be linked.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of this Court.

Pennsylvania Department of Corrections (DOC) employees: Robert Shannon, former Superintendent of SCI-Frackville; S.K. Kephart, Program Manager; M. Wenerowicz, Deputy Superintendent of Centralized Services; A.J. Kovalchick, Deputy Superintendent of Operations; Sharon Luquis, Hearing Examiner; Corrections Officer (CO) Shultz; CO Solonoski; and Robert MacIntyre, Chief Hearing Examiner.

Presently before the Court is the Defendants' Motion to Dismiss the Complaint (doc. 19) in this matter. For the reasons set forth below, the Defendants' Motion to Dismiss will be granted in part and denied in part. Defendants will be required to file an Answer to the sole remaining claim. The Court will vacate the stay of discovery in this matter, and Defendants will be required to respond to any pending discovery.

## II.     Standard of Review

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true the factual allegations in the complaint and construe any inferences to be drawn from the allegations in the plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Detailed factual allegations are not required, *id.* at 231 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d. 929 (2007)), but the complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. at 1974, and factual allegations "that are 'merely consistent with' a defendant's liability"

are not enough.  *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949 (2009).

"[M]ore than labels and conclusions" are required.  *Twombly,* 550 U.S. at 555, 127

S.Ct. at 1964-65.

Pro se pleadings are held to a less stringent standard than formal pleadings

drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197,

2200, 167 L.Ed.2d 1081 (2007).  Pro se litigants are to be granted leave to file a

curative amended complaint "even when a plaintiff does not seek leave to amend,"

unless such an amendment would be inequitable or futile.  *Alston v. Parker*, 363

F.3d 229, 235 (3d Cir. 2004).  However, a complaint that sets forth facts which

affirmatively demonstrate that the plaintiff has no right to recover is properly

dismissed without leave to amend.  *Grayson v. Mayview State Hospital*, 293 F.3d

103, 106 (3d Cir. 2002).


**III.    Background**

**A.    The May 12, 2009 Misconduct Issued by CO Solonoski.**

On May 12, 2009, Counselor Thomas told Atiba Wicker that he had an

important legal phone call.  (Doc. 1, Compl. at ¶ 13.)  Mr. Wicker stated he could not

take the call as he had to attend a treatment group mandated by the Pennsylvania

Board of Probation and Parole.  Counselor Thomas advised him that she would

postpone the legal phone call until he returned from group.  She instructed him to

tell his unit officer upon his return that he had an important legal call and that it was

confirmed by her.  *Id*.

When Atiba Wicker returned from his treatment group he told CO Solonoski what his counselor had said. CO Solonoski replied that if he was lying he would receive a misconduct. (*Id*. at ¶ 14.) Mr. Wicker told CO Solonoski "if he called his counselor, she would confirm it ... then started walking toward his counselor's office." (*Id*.) CO Solonoski yelled "you're not going over there." (*Id*.) The incident was observed by Sgt. Cress. (*Id*.)

At that moment Sgt. Cress beckoned Mr. Wicker to his station. (*Id*. at ¶15.) After explaining what had occurred, Sgt. Cress told Plaintiff, "he would call his counselor to verify his approved legal call. He told plaintiff to return to his cell." (*Id*.) On his way back to his cell, Plaintiff asked CO Solonoski for a grievance form. CO Solonoski replied, "you trying to fuck with me?," and ordered Mr. Wicker to his cell. (*Id*. at ¶ 16.) Later, when Mr. Wicker was released from his cell, CO Solonoski "attempted to give [him] the grievance [form]", Mr. Wicker said he did not want it. (*Id*. at ¶ 17). CO Solonoski replied, "don't you ever threaten me again." (*Id.*)

Later that day, Lt. Gaudreau, a non-defendant, came to Mr. Wicker's cell and told him that CO Solonoski issued him a misconduct because he felt Mr. Wicker had threatened him. (*Id*. at ¶ 18.) Atiba Wicker was then removed from general population cell, placed in disciplinary custody, and handed misconduct A-818090 charging him with: threatening another person; presence in an unauthorized area; refusing to obey an order and using abusive language. (*Id*. at ¶ 19.)

Later that day, Mr. Wicker spoke with Capt. Clark, a non-defendant, complaining that the misconduct charges were bogus. (*Id*. at ¶ 22.) He requested

Counselor Thomas, Sgt. Cress and Lt. Gaudreau as witnesses. (*Id*. at ¶ 25.) He felt Lt. Gaudreau was a necessary witness because he spoke to him about the issue before he received the misconduct, and because Hearing Examiner Luquis "prohibited inmates from talking at misconduct hearings to present or support their evidence." (*Id*. at ¶ 23.) Mr. Wicker also submitted an inmate version form stating that CO Solonoski falsified the facts of the misconduct, and that he needed his witnesses to substantiate his version of the facts. (*Id*. at ¶ 25.)

On May 14, 2009, Mr. Wicker's misconduct hearing was held. Hearing Examiner Luquis denied all of his witnesses "as not being required to establish guilt." (*Id*. at ¶ 26.) She also precluded him from defending himself and from presenting evidence and facts of his case. (*Id*.) Hearing Examiner Luquis dismissed the majority of charges against him (threatening another person; presence in an unauthorized area; and refusing to obey an order), but found him guilty of using abusive language charge. (*Id*.) Mr. Wicker filed an appeal to the Program Review Committee (PRC) which consisted of Deputy Wenerowicz, Deputy Kovalchick and Program Manager Kephart because they "had the power and authority to overrule defendant Luquis' unjust verdict". (*Id*. at ¶ 27.) The PRC affirmed the Hearing Examiner's decision. (*Id*.) However, after Counselor Thomas spoke with Deputy Kovalchick, Atiba Wicker was released from disciplinary custody after serving only 8 days of his original 45 day disciplinary sanction. The guilty verdict, however, was not disturbed. (*Id*. at ¶ 28.) Mr. Wicker's appeals to Supt. Shannon and the Chief Hearing Examiner, Robert MacIntyre, were denied. (*Id*. at ¶¶ 29-30.)

### B.    Ms. Stallworth-Destouet's 2008 Visiting Room Issues.

In 2008, Ms. Stallworth-Destouet's visitation privileges were suspended after CO Krah, a non-defendant, claimed she had been loud and abusive.  (*Id*. at ¶ 37.) She was required to apologize to CO Krah before her visitation privileges were restored.  (*Id*.)  After the reinstatement of her visits, on at least on occasion, both she and her 16-month old daughter were subject to inspection by a drug sniffing dog prior to entering the visiting area.  Ms. Stallworth-Destouet protested this action because she is afraid of dogs.  (*Id*. at ¶ 38.)  Her car was also checked by the drug detection dog.  Ms. Stallworth-Destouet told CO Cooney (non-defendant) and other officers that she was going to complain to her State Senator as to their treatment of her.  Ms. Stallworth-Destouet believed the officers' actions were "retaliatory" because of her prior incident with CO Krah.[4]  (*Id*.)

### C.    The May 25, 2009 Visitation Room Incident.

On May 25, 2009, upon entering the visiting room area in anticipation of his visit with Ms. Stallworth-Destouet, CO Krah said to Mr. Wicker "you like to threaten guards, huh?"  (*Id*. at ¶ 31.)  When Ms. Stallworth-Destouet arrived at the facility, an unidentified officer told her "[you] won't have to worry about being 'checked' by our dog much longer."  (*Id*. at ¶ 39.)

Mr. Wicker's visit with Mr. Stallworth-Destouet was terminated that day by prison staff after CO Shultz, the visiting room camera operator, allegedly witnessed

---

[4]  None of the officers involved in the May 25, 2009 visiting room incident or the subsequent drug search are named as defendants in this action.

-6-

Mr. Wicker's hands between Ms. Stallworth-Destouet's legs, playing with her genitals. (*Id.* at ¶ 32.) CO Shultz issued Mr. Wicker misconduct report A-818923 charging him with "engaging in sexual acts with another or sodomy and violating visiting room regulations." (*Id.* at ¶ 32.)

Atiba Wicker denied the charges and requested the Hearing Examiner review the visiting room video-tape in anticipation of his misconduct hearing. (*Id.* at ¶ 33.) After reviewing the video tape, Hearing Examiner Luquis dismissed the misconduct without prejudice after finding "there was no evidence on the tape to substantiate that [Mr. Wicker and his visitor] did anything inappropriate or violated any visiting room regulations." (*Id.*)

On May 28, 2009, the same day the misconduct charge was dismissed, Supt. Shannon sent Ms. Stallworth-Destouet a letter suspending her visitation privileges indefinitely for "inappropriate touching and violating visitation room regulation." (*Id.* at ¶ 33 and ¶ 41.) Supt. Shannon gave Ms. Stallworth-Destouet the opportunity to file an appeal if she elected to do so. (*Id.* at ¶ 41.) On June 6, 2009, Ms. Stallworth-Destouet wrote to Supt. Shannon explaining she felt she was being harassed because of her race, as she is black and he and CO Schultz are white. (*Id.* at ¶ 35 and 42.) She sent copies of her letter to her State Senators and Secretary Beard. (*Id.*) On June 11, 2009, Supt. Shannon advised Ms. Stallworth-Destouet that her visitation privileges with Mr. Wicker were restored. (*Id.* at ¶ 43.) Supt. Shannon commented that although the video tape did not show what CO Shultz had described in his misconduct report, it "clearly showed inmate Wicker grouping (sic)

at [Ms. Stallworth-Destouet] while [she] stood behind him ... While [their] actions may have been innocent, [they] provided an impression that [their] intentions were illicit .... [but] he would give [them] the benefit of the doubt."  (*Id.*)

The same day that Supt. Shannon advised Ms. Stallworth-Destouet of the reinstatement of her visitation rights, Mr. Wicker appealed the Hearing Examiner's dismissal of the misconduct to the PRC because he felt that he and Ms. Stallworth-Destouet unfairly suffered a sanction, the termination of their visitation privileges, even though he was found not guilty of any misconduct.  (*Id.* at ¶ 36 and ¶ 43.)  His appeals to the PRC and Supt. Shannon were all dismissed.  At final review, Chief Hearing Examiner MacIntyre ruled that Atiba Wicker "had no standing to appeal".  (*Id.*)

## IV.    Discussion

### A.    Alleged Due Process Violations in Connection with the Allegedly Fabricated Misconducts and Disciplinary Hearing Proceedings.

Mr. Wicker alleges that CO Solonoski and CO Schultz issued him false misconducts in violation of his Fourteenth Amendment rights to due process.  He also claims he was denied due process in connection with each disciplinary hearing that resulted in his receipt of a sanction.

The filing of a false misconduct report does not violate an inmate's due process rights.  The general rule, as stated in *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), provides that a "prison inmate has no constitutionally guaranteed

immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law." Thus, where a prisoner is provided due process, no constitutional violation results from his being falsely accused of a misconduct.

In the disciplinary hearing context, a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment. *See Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).*[5] Prisoners charged with violating institutional rules are entitled to rights under the Due Process Clause only when the disciplinary action results in a deprivation of a legally cognizable liberty interest. *See Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); Mitchell v. Horn, 318 F.3d 523, 531-32 (3d Cir. 2003).* "[T]he baseline for determining what is "atypical and significant"-the "ordinary incidents of prison life"-is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997).* In *Sandin*, the Supreme Court concluded that the prisoner at issue does not have a protected liberty interest in remaining free of disciplinary detention or segregation "because his thirty-day

_____

[5] In *Wolff*, the Supreme Court determined that prison disciplinary proceedings are not part of a criminal prosecution and, therefore, the full panoply of rights due a defendant in such proceedings do not apply. In so holding, the Court determined that an inmate may not be deprived of a liberty interest unless the inmate receives: (1) written notice of the hearing at least 24 hours in advance; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

detention, although punitive, 'did not exceed similar, but totally discretionary confinement in either duration or degree of restriction.'" *Shoats*, 213 F.3d at 144 (quoting *Sandin*, 515 US at 486, 115 S.Ct. at 2301). Thus, in deciding whether a protected liberty interest exists under *Sandin*, *supra*, when considering the imposition of a disciplinary confinement as a sanction, the court must consider not only the duration of that confinement, but also the conditions of that confinement, in relation to other prison conditions. *Id.*, 318 F.3d at 532 (citing *Shoats v. Horn*, 213 F.3d at 140, 144 (3d Cir. 2000)).

Guided by the above case law, Mr. Wicker's receipt of CO Solonoski's allegedly falsified misconduct report, and Hearing Examiner Luquis' denial of his requested witnesses, did not violate his due process rights as 8 days in disciplinary confinement does not constitute an "atypical and significant hardship" so as to trigger due process protection. *See Sandin, supra, and Griffin, supra*. Therefore, because he was not deprived of a protected liberty interest, his challenge to the issuance of the misconduct charge is only actionable under § 1983 if CO Solonski issued it in retaliation for having exercised a constitutional right. *See Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002)(citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). This issue will be addressed *infra.*

As for CO Shultz's alleged false misconduct report, Hearing Examiner Luquis dismissed the charge without prejudice. No sanction was ever imposed as a result of misconduct report or Ms. Luquis' actions. Consequently, Mr. Wicker fails to state a due process claim against CO Shultz or Hearing Examiner Luquis in connection

with the visiting room misconduct.  As for the indirect result of misconduct, the 14 day suspension of his visits with Ms. Stallworth-Destouet, neither CO Shultz or Hearing Examiner Luquist made that decision or imposed that sanction.  As Plaintiffs allege, that decision was made by Supt. Shannon.  (Doc. 1 at ¶ 34.)

To the extent Plaintiffs aver that Supt. Shannon violated their due process rights by temporarily suspension of their visitation privileges, this claim also fails. The Fourteenth Amendment Due Process Clause does not protect against every change in conditions of confinement having an adverse impact on a prisoner. *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300.  Plaintiffs have no constitutional liberty interest in visitation.  *Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S.Ct. 2162, 2167, 156 L.Ed.2d 162 (2003).  Likewise, there is no inherent right of friends and family to visit someone who is incarcerated.  *Flanagan v. Shively*, 783 F.Supp. 922, 934 (M.D. Pa.), *aff'd*, 980 F.2d 722 (3d Cir. 1992).  "Additionally, there are no Pennsylvania regulations expressly mandating a right to prison visitation." *Neumeyer v. Beard*, 301 F.Supp.2d 349, 352 (M.D. Pa. 2004)(citing *Africa v. Vaughn*, Civ. No. 96-0649, 1996 WL 65445, at *1 (E.D. Pa. Feb. 14, 1996)). Accordingly, prison officials have the discretion to impose such restrictions upon visitation to address violation of prison rules or unacceptable physical contact between visitors.  *Overton*, 539 U.S. at 131, 123 S.Ct. at 2167.  Because neither Mr. Wicker nor Ms. Stallworth-Destouet had a protected "right" to visitation with each other during Mr. Wicker's incarceration, they also had no right to due process when such visitation was temporarily curtailed.  *See Olim v. Wakinekona*, 461 U.S. 238,

250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983)(due process protects substantive interests to which the individual has a legitimate claim of entitlement). In sum, Plaintiffs' due process claims against CO Solonoski, CO Shultz and Hearing Examiner Luquis fail to state a claim and will be dismissed. Likewise, to the extent Plaintiffs' allege Supt. Shannon violated their due process rights when he ordered the temporary suspension of their visitation rights, this claim also fails to rise to the level of a cognizable claim as they have no vested liberty interest in visitation in the prison setting. Both claims will be dismissed without leave to amend as any such amendment would be futile.

      **B.    Retaliation Claims.**

      "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial party by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Allah v. Seiverling*, 229 F. 3d 220, 224-25 (3d Cir. 2000). A prisoner alleging retaliation in violation of the Constitution must satisfy three (3) elements: (1) that he engaged in a constitutionally protected activity, *Rauser*, 241 F.3d at 330; (2) that he "suffered some 'adverse action' at the hands of prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights", *Id.*, 229 F.3d at 225 (quoting *Suppon v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)); and (3) that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to" take the adverse action against

him, *Rauser*, 241 F.3d at 333-34 (quoting *Mount Health Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)).  However, the mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See* *Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005).

If a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the prison officials to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities.  *Rauser*, 241 F.3d at 334 ("Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.")

With these considerations in mind, the Court will examine each of Plaintiffs' retaliation claims.


### 1.    Mr. Wicker's Retaliation Claims against CO Solonoski.

Atiba Wicker claims CO Solonoski issued him a retaliatory misconduct for "talking to Sgt Cress and for asking for a grievance".  (Doc. 1, Compl. at ¶ 37.) After being found guilty of the misconduct, he was placed in the institution's Restricted Housing Unit (RHU) for 8 days.

Mr. Wicker's contends he was issued the false misconduct in retaliation for asking CO Solonoski for a grievance form. A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. *See Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). However, the facts alleged are that he was offered a grievance form by CO Solonoski and refused it. Moreover, Mr. Wicker alleges that he received the misconduct *after* he told CO Solonoski that he did not want the grievance form. Furthermore, he does not suggest CO Solonoski interfered with his ability to file a grievance against him, or anyone else. Based on the allegations of the Complaint, Mr. Wicker cannot establish a retaliation claim against CO Solonoski based merely on his request for a grievance form. *See Hunter v. Bledsoe*, No. 1:CV-10-0927, 2010 WL 3154963, at *4 fn. 8 (M.D. Pa. Aug. 9, 2010). Having failed to demonstrate that he was engaged in a constitutionally protected activity, there is no need to delve further into this particular claim.

Alternatively, Mr. Wicker alleges he was issued the false misconduct in retaliation for "talking to Sgt. Cress." (Doc. 1 at ¶ 21.) "[A] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). Thus, Mr. Wicker's allegations that CO Solonoski issued him the misconduct, which sent him to the RHU, for "talking to Sgt. Cress" about the incident, is arguably a constitutionally protected activity. The second

prong of the three-part *Rauser* test is also satisfied by the allegations of the Complaint because it is clear that Mr. Wicker suffered an adverse action as a result of his receipt of this alleged retaliatory misconduct, he was placed in the RHU for 8 days. *See Allah*, 229 F.3d at 225 (transfer to administrative custody constitutes adverse action). To satisfy the third prong of his retaliation claim he must allege a causal connection between his constitutionally protected activity of complaining to Sgt. Cress and the adverse action he suffered. The mere fact that Mr. Wicker received a misconduct a short time after he spoke with Sgt. Cress is relevant, but not dispositive, for the purpose of establishing the requisite causal link between his receipt of the misconduct and his alleged protected activity. *See Lape*, 157 F. App'x at 498.

Based on the foregoing, the Court finds that Mr. Wicker has sufficiently alleged a *prima facie* claim of retaliation against CO Solonoski to warrant denial of Defendants' motion on this claim. Accordingly, Mr. Wicker's First Amendment retaliation claim against CO Solonoski, based exclusively on his conversation with Sgt. Cress, survives the defendants' motion to dismiss.

**2.     Plaintiffs' Retaliation Claims against CO Shultz.**

The Plaintiffs aver that CO Shultz issued Mr. Wicker a misconduct in retaliation for each of "them exercising their constitutional rights." (Doc. 1 at ¶ 45.) Yet Plaintiffs do not specify what these constitutionally protected activities were or how CO Shultz knew of them or was motivated by these alleged activities to retaliate

against them.  Other than Mr. Wicker's bare assertion, he presents no evidence to suggest CO Shultz harbored any retaliatory motive when issuing him a misconduct for perceived inappropriate visiting room behavior.  In the Complaint Mr. Wicker alleges that a non-defendant, not CO Shultz, said to him "you like to threaten guards" immediately before his visit with Ms. Stallworth-Destouet, not CO Shultz. (Doc. 1 at ¶¶ 31-32.)  CO Shultz cannot be held personally responsible for the actions or words of another.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  The Complaint is devoid of any allegation that CO Shultz retaliated against him for engaging in any protected activity.  *See Flanagan, supra*. Furthermore, Mr. Wicker did not suffer any adverse consequence as a result of CO Shultz's misconduct.  CO Shultz did not revoke Plaintiffs' visitation privileges. Additionally, Mr. Wicker makes no factual allegations that would support the causation element of his claim.  Merely alleging the ultimate fact of retaliation is insufficient.  Conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983.  *Iqbal,* ___ U.S. at ___, 129 S.Ct. at 1949.  Accordingly, the Court perceives no basis upon which to permit this claim for retaliation to proceed.

Next, to the extent plaintiffs attempt to base their retaliation claim against CO Shultz on Ms. Stallworth-Destouet's past visiting room problems with CO Krah or those involved in the canine drug search incident, they cannot do so based on the allegations of the Complaint.  There are no allegations that CO Shultz was aware of her past problems with CO Krahl or her threats to contact her Senators for perceived harassment by the canine drug search team.  Furthermore, even if they could

alleges such facts, the retaliation claim would fail as neither plaintiff suffered an adverse consequence as a result of CO Shultz's issuance of the misconduct. Thus, Plaintiffs' retaliation claim against CO Shultz is subject to dismissal without leave to amend.

      **C.**     **Lack of Personal Involvement of defendants MacIntyre; Beard; Shannon, Kephart; Kovalchick, and Wenerowicz.**

To state a viable § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003). Personal involvement in the alleged wrongdoing is necessary for the imposition of liability in a civil rights action. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003). A supervisory defendant may be liable if he directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). A civil rights complaint is adequate if it states the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho*, 423 F.3d at 353. There is no *respondeat superior* liability in § 1983 actions. (*Id.*) Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode*,

-17-

423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir.1976).

Based upon the above legal standards, claims against members of the PRC (Deputy Wenerowicz, Deputy Kovalchick and Program Manager Kephart), Chief Hearing Examiner MacIntyre and Supt. Shannon, in connection with their review and unfavorable response to Mr. Wicker's administrative appeals of his misconduct is subject to dismissal due to his failure to allege their personal involvement in the alleged issuance of the false and/or retaliatory misconducts. *See Rode*, 845 F.2d at 1207. Mr. Wicker alleges that each of these defendants had the power and authority to correct/overrule Hearing Examiner Luquis' decision finding him guilty of using abusive language but failed to do so. *See* Doc. 1 at ¶¶ 27, 29 - 30. He does not allege these defendants directed, or knew of and acquiesced in, the alleged deprivation of his due process rights when they occurred. Their involvement is alleged to be after the fact. As such, these allegations are insufficient to show the required personal involvement for stating a claim under § 1983. Thus, Mr. Wicker's § 1983 claims against these defendants will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as he fails to state a claim for relief upon which relief may be granted against them.

###### D.    Ms. Stallworth-Destouet's State Law Defamation Claim against CO Shultz.

Defamation is a state intentional tort. *See Joseph v. Scranton Times L. P.,* 929 A.2d 322, 334 (Pa. Super. Ct. 2008).  Ms. Stallworth-Destouet's defamation

claim for monetary damages is barred by the Pennsylvania Sovereign Immunity statute. 42 PA. CONS. STAT. ANN. § 8522. The Pennsylvania legislature has not chosen to waive this immunity for intentional torts. *See La Frankie v. Miklich*, 152 Pa. Cmwlth. 163, 170-71, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992). This protection means DOC corrections officers are protected from intentional tort claims, such as defamation, to the extent they were acting in the scope of their employment of the alleged tort. *Id*.

According to Plaintiffs, on May 25, 2009, CO Shultz, a state employee, was acting as the "strip and search/visiting room camera-monitoring guard at SCI-Frackville". (Doc. 1, at ¶ 5.) In his role as the visiting room camera-monitoring guard, CO Shultz issued Mr. Wicker a misconduct alleging that he "had [his] hands between Ms. Destouet's legs, playing with her genitals." (*Id*. at ¶ 32.) Accordingly, Ms. Stallworth-Destouet's defamation action is barred by sovereign immunity, and defendants' motion to dismiss will be granted as to this claim.

### E.   Ms. Stallworth-Destouet's Race Based Equal Protection Claim .

The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." *U.S. CONST. amend. XIV, § 1.* As such, it requires all persons "similarly situated" to be treated alike by state actors. *See City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To prevail on an Equal Protection claim, Ms.

Stallworth-Destouet must show that she was treated differently than persons who are similarly situated, and that this discrimination was purposeful or intentional rather than incidental.  *See City of Cleburne*, 473 U.S. at 439, 105 S.Ct. at 3254; *see also Tillman v. Lebanon Co. Correctional Facility*, 221 F.3d 410, 424 (3d Cir. 2000).

Ms. Stallworth-Destouet alleges that because she is black, and CO Shultz and Supt. Shannon are white, the issuance of the visiting room misconduct and the temporary termination of her visitation privileges was racially motivated.  (Doc. 1 at ¶ 35, ¶ 42.)  Defendants asset her claims fail to state a claim as a matter of law because she failed to show that she was treated differently than others, similarly situated.  The Court agrees.

Ms. Stallworth-Destouet's race based equal protection claim does not allege that she was treated differently than another visitor who was suspected of being involved in inappropriate behavior in the prison's visiting room.  As such, she fails to explain how she was treated differently by CO Shultz or Supt. Shannon in their response to perceived inappropriate conduct.  Where there is no evidence of discrimination, there can be no equal protection violation.  *Tillman*, 221 F.3d at 424.  As a result, plaintiffs fail to state a race based Equal Protection claim upon which relief may be granted.

**V.     Conclusion**

Based on the above the following claims shall be dismissed without leave to amend: (1) Mr. Wicker's due process claims against CO Solonoski and CO Shultz for the issuance of a false misconduct; (2) Mr. Wicker's claim against CO Solonoski for issuing him a retaliatory misconduct based on his request for a grievance form; (3) Plaintiffs' retaliation claim against CO Shultz; (4) all claims lodged against members of the PRC (Deputy Wenerowicz, Deputy Kovalchick and Program Manager Kephart), Supt. Shannon and the Chief Hearing Examiner in connection with their review of Mr. Wicker's misconduct appeals; and (5) Ms. Stallworth-Destouet's state law claim of defamation.

Mr. Wicker's retaliation claim against CO Solonoski, based exclusively on his conversation with Sgt. Cress, is the sole claim to survive defendants' motion to dismiss.

An appropriate order will issue.

                                          /s/ A. Richard Caputo
                                          **A. RICHARD CAPUTO**
                                          **United States District Judge**
**Date: September 21, 2010**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ATIBA WICKER, *et al*,          :
                                :
    Plaintiffs          :
                                :    CIVIL NO. 3:CV-09-1629
  v.                            :
                                :    (Judge Caputo)
ROBERT SHANNON, *et al.*,       :
                                :
    Defendants          :

## *O R D E R*

**AND NOW,** this **21st** day of **SEPTEMBER, 2010**, for the reasons set forth in

the accompanying Memorandum, it is ordered that:

1. Defendants' Motion to Dismiss the Complaint (Doc. 19), is granted in part and denied in part.

2. Defendants' motion is granted as to the following claims: (1) Mr. Wicker's due process claims against CO Solonoski and CO Shultz for the issuance of a false misconduct; (2) Mr. Wicker's claim against CO Solonoski for issuing him a retaliatory misconduct based on his request for a grievance form; (3) Plaintiffs' retaliation claim against CO Shultz; (4) all claims lodged against members of the PRC (Deputy Wenerowicz, Deputy Kovalchick and Program Manager Kephart), Supt. Shannon and the Chief Hearing Examiner in connection with their review of Mr. Wicker's misconduct appeals; and (5) Ms. Stallworth-Destouet's state law claim of defamation.

3. All claims against defendants Wenerowicz, Kovalchick, Kephart, Shannon and McIntyre are dismissed, and these defendants are dismissed from this action.

4. Defendants' motion to dismiss is denied as to Mr. Wicker's retaliation claim against CO Solonoski, based exclusively on his conversation with Sgt. Cress.

5.    Defendants have twenty-one (21) days from the date of this Order to file an Answer to the Complaint.

6.    The Stay of Discovery previously granted on June 18, 2010, in this matter (doc. 38) is now lifted.

7.    Defendants have thirty (30) days from the date of this Order to respond to Plaintiffs' pending discovery.


**/s/ A. Richard Caputo**
**A. RICHARD CAPUTO**
**United States District Judge**